UNITED STATES

v.

**John E. MEASE, Lance Corporal (E–3), U.S. Marine Corps.**

NMCM 200200176.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 7 May 2001.

Decided 16 Sept. 2002.

CDR Dennis Boyle, JAGC, USNR, Appellate Defense Counsel.

CAPT Carol J. Cooper, JAGC, USN, Appellate Defense Counsel.

LT Frank L. Gatto, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Senior Judge, VILLEMEZ, and BRYANT, Appellate Military Judges.

OLIVER, Senior Judge:

A military judge, sitting as a special court-martial, convicted Appellant, consistent with his pleas, of unauthorized absence, failure to obey a lawful general order, and operating a motor vehicle while drunk, in violation of Articles 86, 92, and 111, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 911. The military judge sentenced Appellant to confinement for 90 days, forfeiture of $600.00 pay per month for 3 months, reduction to the lowest enlisted pay grade, and a bad-conduct discharge. Pursuant to the terms of a pretrial agreement, the convening authority suspended all confinement in excess of 60 days for a period of 12 months from the date of his action.

After carefully reviewing the record of trial, Appellant's single assignment of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

Appellant claims that his plea to the Article 92(1), UCMJ, offense, failure to obey a lawful general order, was improvident. Specifically, he contends that during the providence inquiry he effectively raised the issue of mistake of fact (ignorance) as a defense to the order's violation. After doing so, he contends that the military judge failed to inquire adequately into the legal and factual applicability of this defense to his situation. We disagree.

 Before accepting a guilty plea, "the military judge [must] explain the elements of the offense and ensure there is a factual basis for the plea." *United States v. Faircloth,* 45 M.J. 172, 174 (1996); *accord United States v. Care,* 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969); *see* Art. 45(a), UCMJ, 10 U.S.C. § 845(a). An appellate court is to review a military judge's decision to accept a guilty plea "for an abuse of discretion." *United States v. Eberle,* 44 M.J. 374, 375 (1996); *see United States v. Roane,* 43 M.J.

93, 94–95 (1995). In the course of a guilty-plea proceeding, if an accused "reasonably raise[s] the question of a defense," *United States v. Timmins,* 21 U.S.C.M.A. 475, 479, 45 C.M.R. 249, 253, 1972 WL 14168 (1972)(mistake of fact), or " 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Garcia,* 44 M.J. 496, 498 (1996)(quoting Art. 45(a), UCMJ); *see also* RULE FOR COURTS-MARTIAL 910(e) and (h)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.).

 At the same time, a military judge may not "arbitrarily reject a guilty plea." *United States v. Penister,* 25 M.J. 148, 152 (C.M.A.1987). The standard of review on the issue of a provident plea is whether the record reveals a "substantial basis in law and fact for questioning the plea." *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). The "mere possibility of a defense does not render a plea of guilty improvident." *United States v. Bullman,* 56 M.J. 377, 381 (2002). Moreover, to find the plea improvident, this court must conclude that there has been an error prejudicial to the substantial rights of Appellant. Art. 59(a), UCMJ. Such a conclusion "must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson,* 50 M.J. 599, 601 (N.M.Ct.Crim.App. 1999); *see also* R.C.M. 910(j).

During the providence inquiry the military judge correctly explained the elements necessary to establish a violation of a lawful general order. These were:

[First, that] there was in existence a certain lawful general order ... [providing that] "persons who have lost their driving privileges to operate a motor vehicle for any reason will not operate any motor vehicle on base";

[Second], that [Appellant] had a duty to obey such order; and

[Third], that on or about 4 September 2000, ... [Appellant] violated this lawful general order by wrongfully operating a motor vehicle on base while [his] driving privileges were suspended.

Record at 13–14. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 16b(1).

According to Appellant's sworn admissions, on 4 September 2000, he drove to a pool hall with some of his friends. While there, he had much more to drink "than [he] should have." Record at 26. He left the pool hall and drove to the front gate of the Marine Corps Base at Camp Lejeune, North Carolina. The sentry detected alcohol on Appellant's breath and made him pull his car over for further investigation. The sentry ran Appellant's license through the computerized system and discovered that Appellant's home state of Pennsylvania had suspended it some 9 months ago. *Id.* at 23, 26.

For the first time on appeal Appellant contends that his responses during the providence inquiry raised a mistake-of-fact defense. Specifically, he argues that he established on the record that, when he drove his car onto the Marine Corps Base, he was unaware that his license had been suspended. Appellant's Brief of 26 Mar 2002 at 3. Moreover, he contends that the military judge failed to discuss with him the potential mistake-of-fact defense and to resolve it on the record. He asks, therefore, that this court dismiss Charge II and its specification and reassess the sentence.

"Military jurisprudence ... has long recognized that a reasonable and honest mistake ... as to a material fact is a defense to criminal activity." *United States v. Adams,* 33 M.J. 300, 301 (C.M.A.1991). R.C.M. 916(j)(1)("Ignorance or mistake of fact") provides, in pertinent part:

> [I]t is a defense to an offense that the accused held, as the result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them,

the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances....

The military judge correctly explained that there was no requirement that Appellant have knowledge of the existence of the lawful general order. Record at 25. "It is axiomatic that ignorance of the law will not excuse an act in violation thereof. This principle applies whether the law is statutory 'or a duly promulgated and published regulation.'" *United States v. Tolkach,* 14 M.J. 239, 241 (C.M.A.1982)(quoting *United States v. International Minerals & Chem. Corp.,* 402 U.S. 558, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971)) (citations omitted). So long as the order had been duly promulgated, no proof is necessary that Appellant had actual knowledge that it existed. *Tolkach,* 14 M.J. at 243–44. In the instant case, Appellant admitted that the order had been duly promulgated and that it was in full effect at the time he was alleged to have violated it. Record at 21–22, 25; *see* Appellate Exhibit IV, ¶ 1003.3.

But the military judge then continued: "So knowledge is not a requirement to be guilty of this particular offense. In the language in the order it doesn't require that you have knowledge of your driver's privileges being suspended." Record at 25. Appellant answered, "Yes, sir." *Id.* Appellant now argues that the military judge did not provide him with a completely correct statement of the applicable law. *See* Appellant's Brief and Assignment of Error of 26 Mar 2002 at 3.[1]

---

1. Along with counsel for Appellant and the Government, we have been unable to locate any appellate cases on the specific issue of under what circumstances an accused's ignorance as to whether his or her driver's license had been suspended can rise to a valid defense to a charge of violating a lawful general order under the UCMJ. Indeed, we have been unable to find any cases at all analyzing situations involving the ignorance or mistake-of-fact defense, or the level of scienter required for criminal culpability, under Article 92(1), UCMJ.

Several State appellate courts have wrestled with the issue as to the degree of *mens rea,* or scienter, necessary to assign criminal culpability for driving with a suspended or revoked license. Some State appellate courts have concluded that conviction requires actual knowledge that the driver's license was no longer valid. *See, e.g., McCallum v. State,* 81 Md.App. 403, 418, 567

In the military, actual knowledge is an element of the offense only for a limited number of specific-intent crimes.[2] In such cases the Government must prove the knowledge element, along with all the other elements, beyond a reasonable doubt. More commonly, however, an accused seeking to assert his innocence on the basis that he was ignorant of or mistaken about a fact necessary to make him criminally liable must resort to the provisions of R.C.M. 916(j)(1) to affirmatively raise the ignorance or mistake-of-fact defense. In the military especially, it is conceivable that one's license could be suspended without one's knowledge. The service member may not have received a written notice of such a suspension due to clerical or postal error. Given how often military personnel rotate duty stations, it is possible that a service member's change of address may have resulted in the failure to receive actual notice of suspension. If the facts clearly supported actual and reasonable lack of knowledge of the suspension, and the defense were properly raised, we are confident that an accused would prevail. Likewise, if such a potential defense became evident during a providence inquiry and the military judge was unable to resolve it on the record, we are confident that he or she would reject the guilty plea and enter a not guilty plea on behalf of the accused service member involved.

However, we are unwilling to read into Article 92(1), UCMJ, as charged in this case,

a scienter element that does not exist in the statutory scheme. To be "wrongful," a violation of the order not to drive on base with a suspended license does not require actual knowledge of the suspension, or scienter, as some State schemes provide.[3] The Supreme Court long ago recognized the fact that the military was a "specialized society" where service members are held to a higher standard than citizens in general. *See Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The Uniform Code of Military Justice "regulate[s] aspects of the conduct of members of the military which in the civilian sphere are left unregulated." *Id.* at 749, 94 S.Ct. 2547. Congress has decided to hold military personnel to a higher standard, making criminal many actions (or refusals to act) and statements that in civilian society would merely be cause for offense or, in certain circumstances, potential grounds for dismissal.[4]

We found no appellate military cases specifically on point as to applicability of the ignorance or mistake-of-fact defense to a violation of Article 92(1), UCMJ. Although a violation of Article 92(2), UCMJ, requires proof of an additional element, that the accused had knowledge of the order, the ultimate element is the same in each, that accused violated or failed to obey the order. *Compare* MCM, Part IV, ¶ 16b(1), *with* ¶ 16b(2). Our Army colleagues recently addressed the degree of intent required for this ultimate element under Article 92(2), UCMJ,

A.2d 967, 974 (Md.Ct.Spec.App.1990); *Jolly v. People*, 742 P.2d 891, 896 (Colo.1987). Others have held that scienter is not an element. *See, e.g., State v. Fridley*, 335 N.W.2d 785, 788 (N.D. 1983); *State v. Buttrey*, 293 Or. 575, 590, 651 P.2d 1075, 1083 (1982). At common law, conviction of a crime required proof of *mens rea.* "[C]riminal offenses requiring no *mens rea* have a 'generally disfavored status.'" *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). In most administrative and regulatory schemes governing the suspension of driving privileges, State legislatures normally require extensive notification efforts to inform the driver that their license was about to be or had been suspended. However, we are to apply the criminal justice scheme applicable to service members under the UCMJ and the regulations and decisions implementing and applying it, as discussed in the main body of this opinion.

2. *See, e.g.,* Art. 90, UCMJ, 10 U.S.C. § 890, assaulting or willfully disobeying superior commissioned officer. To be guilty of either offense, the accused must "then know that the officer was the accused's superior commissioned officer." MCM, Part IV, ¶¶ 14b (1)(c) and 14b(2)(c). *See id.* ¶ 14c(1)(c).

3. *See supra* n. 1 at ¶ 2.

4. Absence without leave, absence, missing movement, and insubordinate conduct are classic examples of purely military criminal offenses. *See* Arts. 86, 87, and 91, UCMJ, 10 U.S.C. §§ 886, 887, 891. "[T]he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty...." *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). *See Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

in two reported cases. In each case the Army Court held that the appropriate *mens rea* for the defense of mistake-of-fact to a charge of violating an order was that it be both honest and reasonable. *See United States v. New*, 50 M.J. 729, 745 (Army Ct. Crim.App.1999), *aff'd*, 55 M.J. 95 (2001); *United States v. Barrows*, 48 M.J. 783, 788 (Army Ct.Crim.App.1998).

■ We concur with the Army's position on this issue. Accordingly, we conclude that the rule for general-intent crimes applies in cases of this kind—that an ignorance or mistake-of-fact defense must include not only an honest belief that he held a valid driver's license but also objective reasons why this belief was "reasonable under all the circumstances." R.C.M. 916(j)(1); *see United States v. Peterson*, 47 M.J. 231, 234–35 (1997); *Garcia*, 44 M.J. at 498. In explaining this principle further, our superior Court added: "The mistaken belief must be true and sincere, rather than feigned or mere pretext, and it must be reasonable." *United States v. True*, 41 M.J. 424, 426 (1995).

■ This conclusion does not end our inquiry, however. In the instant case, the military judge did not clearly advise Appellant that his responses raised the possibility of an ignorance or mistake-of-fact defense. Indeed, he advised him, only partially correctly, that conviction of the offenses "doesn't require that you have knowledge of your driver's privileges being suspended." Record at 25. However, the military judge continued his advice as follows: "However, though I think that based on the circumstances that you described to me, you telling [sic] me that you should have had knowledge of the fact that your driving privileges had been suspended on the 4th of September of 2000." Appellant responded: "Yes, sir." Record at 25.

Ideally, once the issue was raised, the military judge would have discussed with Appellant and his trial defense counsel the potential defense under R.C.M. 916(j)(1). *See* R.C.M. 910(e), Discussion; *United States v.*

*Olinger*, 47 M.J. 545, 548 (N.M.Ct.Crim.App. 1997). Within that legal framework, he would then have developed a factual basis for why Appellant thought that such a defense did or did not exist. *See* R.C.M. 910(e), Discussion. He would then have had Appellant (and his defense counsel) state on the record his belief that the defense did or did not exist. *Penister*, 25 M.J. at 153 (Cox, J., concurring). Finally, the military judge would have made a finding on the record to that effect. *Id.; see Garcia*, 44 M.J. at 499 ("[A] more probing inquiry by the military judge into the possibility of an affirmative defense and findings entered by the judge on the record would have provided a record that was free even of arguable error."). Few records, however, are ideal. In this case, we are confident that the record was "adequately developed" for purposes of affirming the findings and sentence. *Cf. United States v. Lee*, 16 M.J. 278, 281 (C.M.A.1983).

Indeed, our reading of the record leaves us with the "compelling conviction" that the ignorance or mistake-of-fact defense did not exist in this case and that Appellant agreed that it did not exist. *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976). While we accept Appellant's statement that he was unaware that his driver's license had been suspended, as we must, at "face value," *id.*, the additional test is that this belief must have been "reasonable under all the circumstances." R.C.M. 916(j)(1). The military judge questioned Appellant extensively about the circumstances of the suspension of his driver's license. Record at 23–25. During this questioning, Appellant admitted that he knew that he had failed to pay the full amount of a traffic ticket. *Id.* at 24.[5] He also admitted that it was his responsibility to know the status of his license and that, by failing to pay the full amount of the ticket, he "ran the risk of [his] ... driving privileges being suspended." *Id.* at 25. We also note that it had been 9 months since the Commonwealth of Pennsylvania had suspended the license. *Id.* at 23. Although it is possible that Appellant received none of the notices to this effect, his ignorance in this regard would

---

5. Appellant admitted knowing that he had a traffic ticket for $175, of which he had paid only $50. Under such circumstances he knew that he

was running the risk of his driving privileges being suspended. Record at 24–25.

hardly be that of a prudent person.[6] Under these circumstances, we find that his lack of knowledge was not reasonable and the defense of ignorance or mistake-of-fact was not viable. We therefore find no "substantial conflict" between Appellant's plea to this charge and his statements during the providence inquiry. *Peterson*, 47 M.J. at 235. Therefore, there was no error prejudicial to the substantial rights of Appellant. Art. 59(a), UCMJ.

Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.

Judge VILLEMEZ and Judge BRYANT concur.

---

**6.** The mistake-of-fact " 'must not be due to the negligence or carelessness of the defendant.' "

*True,* 41 M.J. at 426 (quoting *State v. Dizon,* 47 Haw. 444, 390 P.2d 759, 769 (1964)).