**UNITED STATES**

v.

**Thomas M. O'DONNELL, Chief Warrant Officer (W–4), U.S. Coast Guard.**

CGCMG 0207.
No. 1250.

U.S. Coast Guard Court of Criminal Appeals.

11 Oct. 2007.

Trial Counsel: LT Patrick M. Flynn, USCG.

Assistant Trial Counsel: LT S. Dawn Woodard, USCGR.

Civilian Defense Counsel: W. Marc Hardesty, Esquire.

Detailed Defense Counsel: LT Lenn A. Ferrer, JAGC, USNR.[1]

Assistant Defense Counsel: LT Robert L. McElroy, JAGC, USNR.

Appellate Defense Counsel: LCDR Necia L. Chambliss, USCGR.

---

1. LT Lenn A. Ferrer, JAGC, USNR, was detailed as defense counsel. However, during the course of the trial, he became a civilian and was retained as civilian defense counsel, along with W. Marc Hardesty, Esquire.

Assistant Appellate Defense Counsel: LCDR Nancy J. Truax, USCG; LT Robert M. Pirone, USCGR.

Appellate Government Counsel: LT Donna D. Leoce, USCG.

Before KANTOR, FELICETTI & TUCHER, Appellate Military Judges.

FELICETTI, Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. The military judge sentenced Appellant to a dismissal, confinement for fifteen months, and a reprimand. The Convening Authority approved only so much of the sentence as includes a reprimand and confinement for fifteen months, but suspended confinement in excess of twelve months for a period of twelve months from the date of the Convening Authority's action, pursuant to the terms of the pretrial agreement.

Before this Court, Appellant has assigned three errors:

I. Appellant's plea is improvident because evidence presented on sentencing was inconsistent with a plea of guilty, and the military judge failed to resolve the inconsistency.

II. Appellant was prejudiced by the Convening Authority's failure to consider clemency matters submitted in accordance with R.C.M. 1105.

III. The military judge erred in admitting and considering Prosecution Exhibits 5 and 7 in determining an appropriate sentence.

All assignments will be discussed.

## Facts

Appellant providently pled guilty to stealing "assorted tools and refrigerant, military property of the U.S. Coast Guard" from 30 September 2002 to 1 January 2003. Despite the wording of the charge, the providence inquiry and stipulation of fact revealed two specific instances of misconduct where Appellant stole a total of three bottles of R–12 refrigerant, two bottles of R–22 refrigerant, and one "Magna" tap-and-die set.

Appellant had initially been charged with stealing a much greater amount of government property over a much longer time period. He pled not guilty and contested the matter during several days of litigation before agreeing to plead guilty to the narrower offense. During this earlier, contested portion of the trial, the Government introduced, over defense objection, two exhibits showing Appellant had stolen over 1600 items of government property at mostly unspecified times over the previous thirty-two years. This evidence consisted of a videotaped interview of Appellant with the property in his storage shed (Prosecution Ex. 7) and a 31-page inventory of the items (Prosecution Ex. 5).

During the videotaped interview, Appellant classified the extensive amount of property in his storage shed as either personal or government property. He claimed that certain cans of refrigerant and a tap-and-die set were his personal property, purchased with his own funds. (Prosecution Ex. 7.) In a subsequent interview with the Coast Guard Investigative Service (CGIS), Appellant went over a 31-page inventory of the items in his shed, annotating the list whether the items were personal or government property. (Prosecution Ex. 5.) Appellant initially listed six cans of refrigerant and a tap-and-die set as his personal property but, upon further consideration, listed these items as government property before the end of the interview. During the providence inquiry, Appellant described in some detail how he stole the five cans of refrigerant and the tap-and-die set which formed the basis of the charged offense. (R. at 1563–77.)

After the trial changed from a factually contested case to a guilty plea, both Prosecution Exhibits 5 and 7 were re-admitted over renewed defense objection as government aggravation evidence.

## Assignment One

Appellant asserts that his plea was improvident because the videotape introduced by

the Government, Prosecution Exhibit 7, contained pretrial statements from Appellant that were inconsistent with his plea and that the military judge failed to resolve the inconsistency. We disagree. While the pretrial statement of personal ownership was inconsistent with a plea to stealing what appears to be the same property, it was not error to accept the plea without further inquiry.

A guilty plea shall not be accepted if an accused, after a plea of guilty, sets up a matter inconsistent with the plea, or if it appears that he has entered the plea improvidently, or through lack of understanding of its meaning and effect. Article 45(a), UCMJ, 10 U.S.C. § 845. The law regarding a trial statement, or evidence, from an accused that conflicts, or is inconsistent, with his guilty plea is well-settled. *See United States v. Lee*, 16 M.J. 278, 280–81 (C.M.A.1983) (*citing* Article 45, UCMJ; *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977)). This case law, however, is not explicitly applicable here since the Government, not the accused, introduced the inconsistent pretrial statement.

█ Nonetheless, Article 45's plain language is not strictly limited to the accused. A guilty plea shall not be accepted if it appears to be improvident. Article 45, UCMJ. Such an appearance could, as Appellant argues, be created by the Government. The question is what standard to apply in the situation where the Government impeaches the guilty plea. Appellant maintains that all inconsistencies raised by the Government must be resolved before the military judge accepts the plea. We believe, however, that the plea's providence is only brought into question if government sentencing evidence creates the appearance of a substantial basis in law or fact for questioning the plea. If the Government does so, then the military judge must reopen the *Care* inquiry to ensure a provident plea. Article 45(a), UCMJ; *United States v. Care*, 18 USCMA 535, 40 C.M.R. 247, 1969 WL 6059 (1969); *cf. United States v. Marcy*, 62 M.J. 611, 615 (A.F.Ct.Crim.App. 2005) (despite earlier language suggesting that Article 45(a) did not apply to government evidence, the court ultimately concluded that the providence inquiry must be reopened if the evidence, taken as a whole, casts substantial doubt on the plea).

█ Here, the videotape (Prosecution Exhibit 7) did not create a substantial basis for questioning the plea. Appellant recanted his claim that the items were his personal property in a later pretrial interview with CGIS. (Prosecution Ex. 5.) His position remained consistent from that point forward. More importantly, he successfully pled guilty to the offense, providing a detailed description of how he stole the items from the Government. The fact that he denied any wrongdoing in an early interview with CGIS is of only marginal consequence in light of his subsequent statements and testimony. *See United States v. Richardson*, 15 USCMA 400, 402–03, 35 C.M.R. 372, 374–75, 1965 WL 4681 (1965) (in the ordinary situation, accused's pre-plea protestations of innocence have little bearing on the plea's providence).

### Assignment Two

█ Appellant asserts that he was prejudiced by the Convening Authority's failure to review previously read clemency materials when taking his action and requests that we correct the error without returning the record to the Convening Authority. We agree with Appellant's asserted error and request to remedy the error here.

Appellant was sentenced on 18 May 2005. On 26 May 2005, Appellant, through counsel, filed with the Convening Authority a "Request for Clemency ICO CWO4 Thomas M. O'Donnell, USCG." On 9 June 2005, the Convening Authority, by letter, noted that he presently lacked authority to act on the sentence, stated that he would consider the request as one for deferment of confinement, and summarily denied the request. He also stated, however, that he would, in accordance with Rule for Courts–Martial (R.C.M.) 1107, Manual for Courts–Martial, United States (2005 ed.), consider the request prior to taking action on the sentence.

Four months later, the Staff Judge Advocate (SJA) prepared the staff judge advocate's recommendation (SJAR). In paragraph 11, it advised that the Convening

Authority must consider, among other things, "any clemency petitions or other matters that defense counsel or CWO4 O'Donnell submit under R.C.M. 1105 or 1106(f)." The SJA advised the Convening Authority in paragraph 14 to write "considered" and the date, and to affix his signature to the recommendation and the top page of "each matter and each enclosure submitted for [his] consideration by the accused, or his counsel, under R.C.M. 1105 or 1106(f)." It also noted in paragraph 14 that "they will be attached to the record of trial."

Unfortunately, the SJA did not enclose the 26 May 2005 request for clemency, which was the only defense clemency submission. To compound the error, the SJAR made no reference to the 26 May clemency request and indicated that any such defense submission would be attached to the SJAR. The Convening Authority acted on 25 October 2005. Following the SJAR, he wrote "considered," and signed and dated the SJAR. No such statement or initials appear on Appellant's request for clemency.

It is clearly error for a convening authority not to consider matters submitted in accordance with R.C.M. 1105 or 1106(f) prior to taking action under R.C.M. 1107. *United States v. Craig*, 28 M.J. 321, 325 (C.M.A. 1989); *United States v. Osuna*, 56 M.J. 620, 624–25 (C.G.Ct.Crim.App.2001). Moreover, we are not to "guess" as to whether clemency matters prepared by defense counsel were attached to the recommendation or otherwise considered by the convening authority. *Craig*, 28 M.J. at 325.

In this case, the Convening Authority saw and responded to Appellant's clemency petition in June, treating it as a request for deferment under R.C.M. 1101, but also stating that he would reconsider it when taking his action. There is no doubt, therefore, that the clemency request was reviewed prior to the action. However, a number of factors, taken together, indicate that this record does not meet the requirements of Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2), and *Craig*.

The first problem is the context of the Convening Authority's June review. At that time, the petition was appropriately treated as a deferment request. As such, Appellant bore the burden of proof. R.C.M. 1101(c)(3). This is substantially different from the treatment of a clemency request. An accused bears no burden of proof to show that he deserves clemency since a convening authority may grant clemency for any, or no, reason. R.C.M. 1107(d)(1). Given these significant differences, we cannot say that Appellant's petition was considered as a clemency matter under the much less restrictive language of R.C.M. 1107, especially since the SJA provided no guidance in this area.

The second problem is with the SJAR itself. It contains what appears to be a "boilerplate" statement that any defense clemency request would be attached to the record of trial. However, the May request was not attached, and no mention was made of it. The lack of any such attachment, or mention of the previously reviewed petition, is a serious omission since it implied to the Convening Authority that no clemency request had been made.

Finally, given the passage of a significant amount of time between the clemency petition's initial review in June and the action in October, the record does not convince us that the Convening Authority considered the clemency petition at the time of action, as was his duty to do.

Of course, the Convening Authority might have recalled the May clemency request and reconsidered it, as promised, before taking action in October. There is, however, nothing in the record, such as an affidavit, to support this possible course of action. We decline to presume such a scenario even after taking into account the presumption of regularity in the conduct of government affairs. *United States v. Norris*, 33 M.J. 635, 638 (C.G.C.M.R.1991) (*citing United States v. Masusock*, 1 USCMA 32, 1 C.M.R. 32, 1951 WL 1504 (1951)); *United States v. Garcia*, 44 M.J. 748, 749 (C.G.Ct.Crim.App.1996).

The normal remedy for such an error is to return the record to the convening authority for a new SJAR and action. *United States v. Craig*, 28 M.J. 321, 325 (C.M.A.1989). Appellant, however, requests that we address the error when conducting our sentence appro-

priateness review under Article 66, UCMJ, 10 U.S.C. § 866. *See United States v. Hutchison,* 56 M.J. 684, 688 (C.G.Ct.Crim. App.2001) (reconsideration en banc), *rev'd on other grounds,* 58 M.J. 744 (C.G.Ct.Crim. App.2003). The Government did not oppose this form of remedy, so we shall consider the error, among the many other factors, when determining what sentence "should be approved." Article 66(c), UCMJ.

### Assignment Three

■ Appellant asserts it was error for the military judge to admit government evidence of uncharged misconduct consisting of a 31–page written inventory of property Appellant had allegedly stolen over the course of a 32–year career (Prosecution Ex. 5) along with a videotape of this property (Prosecution Ex. 7). We agree.

It is commonly stated that a military judge's evidentiary ruling during sentencing is reviewed for clear abuse of discretion. *United States v. Clemente,* 50 M.J. 36, 37 (C.A.A.F.1999). This Court, however, is not limited to an abuse of discretion standard because we can also assess a military judge's evidentiary ruling *de novo* pursuant to our Article 66(c), UCMJ, powers. *United States v. Conover,* 61 M.J. 681, 683 (C.G.Ct.Crim. App.2005); *United States v. Olean,* 56 M.J. 594, 598 (C.G.Ct.Crim.App.2001).

Rulings where balancing under Military Rule of Evidence (M.R.E.) 403 is articulated receive considerable deference; rulings where balancing is omitted receive no deference. *United States v. Hursey,* 55 M.J. 34, 36 (C.A.A.F.2001); *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000).

At trial, the defense asserted three reasons for objecting to both the inventory and videotape: M.R.E. 404(b), uncharged misconduct, and M.R.E. 403. (R. at 1461–70, 1613–14.) The military judge overruled the objections, admitting the evidence in aggravation and stating, "But I think the videotape is fair for consideration in aggravation, not because it's uncharged misconduct but because it tends to demonstrate a pattern of activity that contributed to—or got him into committing the offense of what he's been charged with and convicted today." (R. at 1614.) While no comment was made when overruling the

defense objection to the written inventory, it appears that the same reasoning was applied. (R. at 1615.) No mention was made to balancing the exhibits' probative value against the danger of unfair prejudice in accordance with M.R.E. 403.

As stated in R.C.M. 1001(b)(4), "[t]he trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Under some circumstances, therefore, evidence of uncharged misconduct is admissible in a larceny case to show the full impact of the crimes upon a local institutional victim. *United States v. Nourse,* 55 M.J. 229, 232 (C.A.A.F. 2001). However, the words "directly relating to or resulting from" in R.C.M. 1001(b)(4) replaced an earlier version of the rule that permitted evidence of "any aggravating circumstances relating to the offenses." *Compare* MCM (1969 rev. ed.) *with* MCM (1984 ed.) (the language from the 1984 edition remains in force in the 2005 edition, which was in effect during the pre-sentencing phase of the trial). Thus, all formulations of the words "directly relating to or resulting from" must respect the limits imposed by the President in 1984.

Our higher court recently emphasized the requirement to give genuine meaning to the limiting words added to the rules in 1984. *See United States v. Hardison,* 64 M.J. 279 (C.A.A.F.2007). Specifically, the link between the charged and uncharged misconduct "must be direct as the rule states, and closely related in time, type, and/or often outcome, to the convicted crime." *Id.* at 282. The court also explicitly acknowledged the obvious, but sometimes overlooked, point that the purpose of government aggravation evidence is to make the charged offense appear " 'worse, more serious, or more severe' " than it otherwise would. *Id.* at 283 (*citing Webster's Ninth New Collegiate Dictionary* 64 (9th ed.1991)). This, presumably, leads to increased punishment—at least that is the desire of the trial counsel who offers such aggravating evidence.

In this case, the government aggravation evidence tended to show that Appellant stole

an additional 1600 items from the Coast Guard at undefined times, and unknown but probably widely dispersed locations, over the course of a 32–year period. He pled guilty, by contrast, to stealing a total of six items on two specific instances within a 3–month period. Under these circumstances, we do not find the link between the charged and uncharged misconduct direct as required by R.C.M. 1001(b)(4) or "closely related in time, type, and/or often outcome." *Id.* at 282. Admission of Prosecution Exhibits 7 and 5, therefore, violated R.C.M. 1001(b)(4) under either the abuse of discretion or de novo standard.

Balancing the probative value of this evidence against the danger of unfair prejudice is another way to reach the same result. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members. . . ." M.R.E. 403. As stated by the military judge, both prosecution exhibits tended to show "a pattern of activity that contributed to—or got him into committing the offense of what he's been charged with and convicted today." (R. at 1614.) The evidence was apparently not, according to the military judge's comments, admitted to show significant adverse impact on the mission, discipline, or efficiency of the command. Nor was it admitted to describe the circumstances surrounding those offenses or the repercussions felt. As such, we find the probative value of Appellant's "pattern of activity" to be very low.

Balanced against this is the danger that Appellant would be punished for acts for which he was not charged and to which he did not plead guilty. We normally find this risk to be low in a trial by military judge alone. *United States v. Bridges,* 65 M.J. 531, 534 (C.G.Ct.Crim.App.2007). Moreover, the military judge stated that she would not sentence Appellant based on the uncharged misconduct. (R. at 1613–14.)

The entire point of this government aggravation evidence, however, was to make the charged offense appear more severe and worthy of increased punishment. To that end, the prosecution argued that Appellant

had "continuously" failed to live up to the special trust of the President of the United States during many years of commissioned service. (R. at 1639.) The Government also implied that Appellant had set a bad example for junior personnel during his entire career. (R. at 1640.) We also note that the written inventory indicates there were over 1600 items of government property in Appellant's possession, taken over a 32–year period, while Appellant pled guilty to stealing a total of six items on two specific occasions within a 3–month period. These six stolen items had a value of slightly over five hundred dollars. (R. at 1646–48.) We, therefore, assess the risk of Appellant being punished for the uncharged misconduct as significant and find it substantially outweighed the exhibits' nominal probative value. This risk appears to be borne out by a comparison of the sentence with the limited nature of the convicted offense; Appellant's many years of service, including twenty-five years of sea duty; the massive amount of uncharged misconduct evidence; and the sentence requested by the Government, which did not include a dismissal.

After presentation of the defense sentencing case, trial counsel successfully requested that the military judge also consider Prosecution Exhibits 5 and 7 as rebuttal evidence. (R. at 1638.) Specifically, the prosecution sought to rebut two stipulations of expected testimony regarding Appellant's good military character and portions of Appellant's unsworn statement that stated he had received five Good Conduct Medals throughout his 32–year career. (R. at 1638–39.) On appeal, the Government adopted this argument while also maintaining that the exhibits were properly admitted as aggravation evidence.

In addition to the previously discussed problem with M.R.E. 403, this argument ignores the actual sequence of events at trial. Prosecution Exhibits 5 and 7 were admitted as government aggravation evidence before the defense presented its case. Evidence of Appellant's good military character was only admitted afterward, possibly in an attempt to counter Prosecution Exhibits 5 and 7. If so, then the Government cannot transform the

defense's attempt to rebut Prosecution Exhibits 5 and 7 into an independent basis to admit them, or claim that the defense opened the door for their admission. The Government, in other words, forced open the metaphorical door and cannot claim they were invited in because the defense turned on the heat to counter the draft.

The record, of course, is silent on the rationale behind the defense strategy. The Government's argument assumes that the defense would have introduced the exact same evidence had not Prosecution Exhibits 5 and 7 already been admitted. While this is possible, we decline to join in this assumption and limit our review to the order of evidence reflected in the record. In any event, the exhibits fail under M.R.E. 403 balancing as previously discussed.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. The findings of guilty are deemed to be correct in law and fact and are affirmed. We now reassess the sentence in light of the discussed errors. As to error at trial, we may affirm only so much of the sentence as we believe the military judge would have adjudged in the absence of the error we are now correcting; if we are unable to determine what that would have been, we must order a rehearing on sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We note that the Convening Authority disapproved the dismissal adjudged by the military judge. Nevertheless, to ensure that Appellant suffered no prejudice as a result of the error discussed in assignment three, or as a result of the error in the SJAR, we find that only so much of the sentence as provides for confinement for eight months and a reprimand should be approved. Accordingly, the findings of guilty and the sentence, as modified above, are affirmed.

Judges KANTOR and TUCHER concur.