*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Addam J. MOORE**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202300195**

_____

Decided: 6 June 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Eric A. Catto

Sentence adjudged 8 March 2023 by a special court-martial convened at Marine Corps Base Hawaii, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for four months, and a bad-conduct discharge.

For Appellant:
*Captain Edward V. Hartman, JAGC, USN*

For Appellee:
*Lieutenant Commander James P. Wu Zhu, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Judge MIZER delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

MIZER, Judge:

This case began at a general court-martial where Appellant was charged with two specifications of sexual assault without consent, two specifications of extramarital sexual conduct, and one specification of indecent conduct in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ).[1]

Pursuant to Article 53a(a)(1)(A)-(B), UCMJ, and Rule for Courts-Martial 705, the parties entered into a plea agreement where Appellant agreed to plead guilty to one specification of assault consummated by a battery for unlawfully touching his victim's arm, and one specification of extramarital sexual conduct for having sexual intercourse with his victim in violation of Articles 128 and 134, UCMJ.[2] Nevertheless, citing *United States v. Terlep,*[3] the parties agreed that the victim, U.S. Army Captain (CPT) D. Mike, would be able to testify during sentencing as to her belief that Appellant sexually assaulted her.[4]

As consideration for this agreement, the convening authority agreed to withdraw all of the charges and specifications that were initially referred to a general court-martial and to resolve this case at a special court-martial.[5] With respect to the sentence, the parties agreed the military judge would sentence Appellant to a bad-conduct discharge and reduction to E-1.[6] Finally, they agreed that the military judge would impose a sentence including three to six

———

[1] App. Ex. III.

[2] 10 U.S.C. §§ 928; 934.

[3] 57 M.J. 344 (C.A.A.F. 2002).

[4] App. Ex. I at 4.

[5] App. Ex. I at 1; 5.

[6] App. Ex. I at 6.

months of confinement for each of the charged offenses, and that these sentences would run concurrently.[7]

Accordingly, Appellant was convicted, consistent with his pleas, of one specification of assault consummated by a battery[8] and one specification of extramarital sexual misconduct.[9] And, as noted above, the military judge sentenced Appellant in accordance with the bargained-for plea agreement.

But Appellant now levels a broadside at the bargain he struck below[10] asserting six assignments of error: (1) whether Appellant's conviction for assault consummated by a battery in violation of Article 128, UCMJ, was improvident; (2) whether the military judge abused his discretion when he accepted Appellant's guilty plea for extramarital sexual conduct in violation of Article 134, UCMJ; (3) whether the military judge abused his discretion by allowing the Government to introduce aggravation evidence beyond the scope of the charge for which Appellant pleaded guilty; (4) whether the military judge abused his discretion by allowing a victim impact statement that went beyond the scope of the charge for which Appellant pleaded guilty; (5) whether Appellant's defense counsel ineffectively represented him during his court-martial; and (6) whether the sentence adjudged is inappropriately severe.

---

[7] App. Ex. I at 7.

[8] 10 U.S.C. § 928.

[9] 10 U.S.C. § 934.

[10] We have recently had occasion to discuss Congress's adoption of Article 53a, UCMJ, which incorporated much of Federal Rule of Criminal Procedure 11 into the UCMJ in an intentional effort to put an end to so-called "beat-the-deal" plea bargaining. *United States v. Colletti,* __ M.J. __, 2024 CCA LEXIS 186, *8 (N-M. Ct. Crim. App. 2024)(citing Dep't of Defense, Report of the Military Justice Review Group 484 (2015) (hereinafter MJRG Report)). But Congress did not provide for a corollary to Rule 11(b)(1)(N), which permits a plea-agreement to include a provision waiving the right to appeal or collaterally attack the sentence. Thus, while the waiver of the right to appeal is a common term in agreements made pursuant to Rule 11 in federal district courts, Nancy J. King & Michael E. O'Neill, *Appeal Waivers and the Future of Sentencing Policy*, 55 DUKE L.J. 209, 231 (2005), such waivers remain prohibited by Rule for Courts-Martial 705(c)(1)(B). While some may question the wisdom or efficiency of allowing servicemembers to challenge their bargained-for pleas of guilty on direct appeal, "Courts play a limited role in effecting policy in this country. In short: legislatures make the policy; we interpret it." *Faber v. Ciox Health, LLC,* 944 F.3d 593, 596 (6th Cir. 2019).

As set forth below, we find merit in Appellant's first assignment of error. We conclude that the appropriate remedy is to set aside the findings, set aside the sentence, and permit him to plead anew or proceed to trial.[11]

## I. BACKGROUND

The stipulation of fact in this case is carefully curated. Appellant, a married Marine then stationed in Hawaii, was sent on temporary additional duty orders to attend a Marine Corps Career Planner Course.[12] On Halloween night in 2020, Appellant met CPT Mike at the Tin Roof Bar in San Diego, California. While there, Appellant ordered "Irish Trash Cans," a mixed drink containing red bull and several types of alcohol, for both himself and CPT Mike. Appellant encouraged his superior commissioned officer to drink. Later, they took an Uber back to CPT Mike's room at the Navy Lodge.

Once there, the two had sex. But before they did so, Appellant told CPT Mike he was going to "try something new."[13] And the something new? It was to touch her arm with his hand. The parties stipulated that CPT Mike didn't consent to the touching of her arm, that Appellant wasn't forced to do so, that he could have avoided touching her arm if he wanted to, and that he had no legal justification or excuse for touching her arm.[14] So far so good.

*1) Appellant pleads guilty to assaulting CPT Mike on her bicep.*

During the military judge's *Care*[15] inquiry, Appellant, describing the assault, said he "just took a leap of faith…spur of the moment" and touched CPT Mike's arm, but he "kind of received bad feedback from that."[16] Her "facial expressions" reflect that it "didn't seem to be enjoyable."[17] He told the military judge that he touched CPT Mike's bicep with one of his hands.[18] Appellant went on to explain that after "the matter and looking back, there was—it just—it didn't line up. It was unwanted."[19] And Appellant thought it "would have been

---

[11] *See, e.g., United States v. Hairston*, 522 F.3d 336, 342 (4th Cir. 2008).

[12] Pros. Ex. 1 at 2.

[13] *Id.*

[14] Pros. Ex. 1 at 2-3.

[15] *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (C.M.A. 1969).

[16] R. at 26.

[17] R. at 26.

[18] R. at 27.

[19] R. at 28.

[an] approach" that would lead to sex, but after the initial assault of CPT Mike's arm, he "took a step back and went at a different approach."[20] And that approach, whatever it was, did lead to sex.

The military judge asked if Appellant had "any sort of mistake of fact as to whether or not [CPT Mike] was consenting" to being touched on her bicep, and Appellant responded, "I do not, Your Honor."[21] Neither party requested additional inquiry, and the military judge convicted Appellant of assault consummated by a battery in accordance with his pleas.

*2) The Government introduces matter inconsistent with Appellant's plea.*

As the Scottish poet Robert Burns observed, the best-laid plans of mice and men often go awry.[22] And Appellant's plea, which *was* best-laid, quickly unraveled as the Government opened its sentencing case.[23]

In an apparent effort to obtain a sentence on the higher end of the bargained-for three-to-six-month sentencing range for confinement, the Government introduced a number of reports of interviews taken by agents from the Naval Criminal Investigative Service (NCIS) during its investigation of CPT Mike's allegation that Appellant sexually assaulted her.[24] While these interviews do contain matters in aggravation, they also squarely raise the mistake of fact defense to the alleged assault and present a substantial basis in both law and fact to question Appellant's plea to that Charge.[25]

One of these reports recounted an interview of Army Second Lieutenant (2LT) S. Foxtrot.[26] It is there we learn that, on Halloween night in 2020, 2LT Foxtrot, CPT Mike, and other students assigned to the Uniformed Services University of the Health Sciences (USUHS) in Bethesda, Maryland, joined a table of three Marines in a bar in the Gaslamp Quarter of San Diego.[27] And, consistent with the stipulation of fact, 2LT Foxtrot describes how one of the

---

[20] R. at 29.

[21] R. at 28.

[22] Robert Burns, *To a Mouse* (1785) ("The best-laid schemes o' Mice an' Men gang aft agley.").

[23] *United States v. Marcy,* 62 M.J. 611, 614 (A.F. Ct. Crim. App. 2005) ("[T]rial counsel will ordinarily find impeaching a guilty plea to be an unproductive litigation strategy.").

[24] R. at 69.

[25] *See generally, United States v. Goodman,* 70 M.J. 396, 400 (C.A.A.F. 2011).

[26] Pros. Ex. 4.

[27] Pros. Ex. 4 at 1.

Marines, who would later be identified as Appellant, was pressuring CPT Mike to drink. Not mentioned in the stipulation of fact, and understandably so, is that she observed Appellant touching CPT Mike's back with his hands while they were in the bar.

The group of officers and Marines closed the bar that night. As they spilled out onto the street after last call, 2LT Foxtrot saw Appellant and CPT Mike "very close" to each other. As the group walked down the street, Appellant and CPT Mike fell behind and started kissing. And so 2LT Foxtrot sent another officer, 2LT A. Echo, to check on her. When he got back, he said that CPT Mike told him she "was fine and to leave her alone" and he reported that she was a "little aggressive about it."[28] The larger group, which included at least one enlisted Marine, then went into a 7-Eleven, and 2LT Foxtrot never saw CPT Mike or Appellant again that night.

In another interview introduced by the Government, Public Health Services Ensign (ENS) J. Tango, another USUHS student there that Halloween night, describes going into a bar where the group of students joined three Marines sitting at a picnic table.[29] While admitting he was drunk by the end of the evening, ENS Tango recalls that it was another Marine, not Appellant, who was kissing CPT Mike in the bar. ENS Tango intervened and asked CPT Mike if she was okay with the situation, and she said she was.[30]

Because he was drunk, ENS Tango left the bar before the others. But by the time his Lyft arrived, he saw CPT Mike "making out" with the same Marine while ENS Tango was waiting for his car.[31] Before getting into the car, he again asked CPT Mike if she was okay. She gave him a thumbs up, and she told him she was okay.[32]

But 2LT Foxtrot told NCIS that the Marine identified by ENS Tango was with the larger group that went to 7-Eleven, and *that* Marine was with her until she boarded a trolley with ENS Tango at 0130 early the next morning. However, the trolley shut down shortly after they climbed aboard, and instead of a Lyft, 2LT Foxtrot told NCIS that she and ENS Tango walked back to their individual rooms at the Navy Lodge, arriving sometime after 0230.

---

[28] Pros. Ex. 4 at 2.

[29] Pros. Ex. 4 at 1.

[30] Pros. Ex. 6 at 2.

[31] *Id.*

[32] *Id.*

For his part, ENS Tango couldn't remember the name of the bar that night, but he denied that the Marines there were pressuring anyone to drink. He also didn't remember meeting anyone with Appellant's first name, Addam.

Finally, the Government introduced an interview of CPT Mike.[33] She recalled Appellant ordering "Irish trash cans," which they drank "crossed arm style" while they talked.[34] She recalled how, at some point, Appellant was very close to her and started rubbing her back over her clothes while their legs were touching one another.[35] She told agents from NCIS that she blacked out while in the bar around 2300 that night.

Her next memory was of Appellant waking her up in an Uber after they arrived at Naval Base San Diego, where CPT Mike was staying at the Navy Lodge.[36] The gate closest to the Navy Lodge was closed, so they had to walk to another. As they walked, Appellant told CPT Mike how earlier that evening she told her friends that she was fine and sent them home. He said she then performed oral sex on Appellant and later had sex with him somewhere in the Gaslamp Quarter.[37] In response, she told him she remembered being in a "dark place" with her pants down around her knees while Appellant stood in front of her trying to pull them up as someone approached. She remembered someone with a flashlight telling them, "you all can't do that here."[38]

When they finally arrived at an open gate, Appellant and CPT Mike presented their Common Access Cards to the sentry who saluted CPT Mike. CPT Mike, a graduate of the United States Military Academy at West Point, New York, returned the salute. By this point, she told agents from NCIS that she was "coherent" and "able to walk normal."[39] When Appellant told her that he couldn't wait to get her into her hotel room, she asked him, "what if I just want

---

[33] CPT Mike also made an unsworn victim statement pursuant to Article 6b, UCMJ, and Rule for Courts-Martial 1001(c)(5). But unlike Prosecution Exhibit 3, unsworn victim statements are not evidence. *United States v. Tyler*, 81 M.J. 108, 113 (C.A.A.F. 2021).

[34] Pros. Ex. 3 at 2.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] Pros. Ex. 3 at 3.

to go to sleep?"[40] Appellant told her he had "come all this way," and so she let him into her room at the Navy Lodge.

After they both used the restroom, CPT Mike sent 2LT Echo a text saying that she was fine but had no recollection of the last few hours. Appellant then invited CPT Mike to sit with him on the bed. He removed her shirt and her bra, and began sucking on her breasts. Appellant asked her to remove his shirt, which she did with some difficulty because her hands were shaking. They then had vaginal and anal sex.

CPT Mike never mentioned Appellant's assault on her bicep in either of the two statements she gave to NCIS, which are attached to the record. But the documents introduced by the Government at sentencing, along with the stipulation of fact and the *Care* inquiry, inform us that this assault occurred in CPT Mike's room at the Navy Lodge sometime immediately before Appellant had sex with CPT Mike for the second time that evening.

## II. DISCUSSION

### A. The Government set up matters raising a possible defense, and the military judge abused his discretion when he failed to resolve the apparent inconsistency or reject the plea.

We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea *de novo*.[41] In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding an appellant's guilty plea.[42]

"An abuse of discretion occurs when there exists 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'"[43] Pursuant to Article 45, UCMJ, a guilty plea shall not be accepted if an accused, after a plea of guilty, sets up matter inconstant with the plea, or if it appears that he has entered

---

[40] *Id.*

[41] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[42] *Id.*

[43] *United States v. Hayes*, 70 M.J. 454, 457 (C.A.A.F. 2012) (citing *United States v. Inabinette*, 66 M.J. at 322).

the plea improvidently, or through lack of understanding of its meaning and effect.[44]

"If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea."[45] But "Article 45's plain language is not strictly limited to the accused."[46] "A guilty plea shall not be accepted if it appears to be improvident."[47]

An affirmative defense to a charged offense would, by definition, constitute matter inconsistent with a plea of guilty and a military judge must resolve the apparent inconsistency or reject the plea.[48] That said, not every mitigating statement or word requires further inquiry, and a military judge is not required to reopen a plea and inquire further where an accused raises the "mere possibility of a defense."[49] But if a party sets up matter raising a possible defense, then the military judge is required to make further inquiry and resolve any apparent ambiguity or inconsistency.[50]

Rule for Courts-Martial 916(j)(2) places no limitation on the source or the kind of evidence that may establish a mistake of fact defense.[51] And the evidence supporting that defense "can come from evidence presented by the defense, the prosecution, or the court-martial."[52]

The infliction of bodily harm is a required element of assault consummated by a battery, and to constitute bodily harm, an assault "must be done without

---

[44] 10 U.S.C. § 845.

[45] *United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006) (citation omitted) (cleaned up).

[46] *United States v. O'Donnell*, 65 M.J. 795, 797 (C.G. Ct. Crim. App. 2007).

[47] *Id*. (citing Article 45, UCMJ).

[48] *Hayes*, 70 M.J. at 458; *United States v. Mease*, 57 M.J. 686, 690 (N-M. Ct. Crim. App. 2022).

[49] *United States v. Shaw,* 64 M.J. 460, 462 (C.A.AF. 2007) (citation omitted) (cleaned up).

[50] *Phillippe*, 63 M.J. at 310-11; *Shaw*, 64 M.J. at 462 ("The existence of an apparent and complete defense is necessarily inconsistent with a plea of guilty.").

[51] *United States v. Thompson*, 83 M.J. 1, 5 (C.A.A.F. 2022).

[52] *Id*. at 4 (citing *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998)).

legal justification or excuse and without the lawful consent of the person affected."[53] Consent can convert what might otherwise be an offensive touching into non-offensive touching, and a reasonable and honest mistake of fact as to consent constitutes an affirmative defense to assault consummated by a battery.[54]

During the *Care* inquiry, Appellant told the military judge that, while he was in CPT Mike's hotel room, he "took a leap of faith" and touched her bicep.[55] He also told the military judge that it was her reaction, a facial expression, that, after the fact, informed him that his advance was unwanted. While this could be read to raise the mere possibility of the defense of mistake of fact, the military judge asked Appellant if he had "any sort of mistake of fact as to whether or not she was consenting to you touching her that way," and he replied that he did not.[56] While "a military judge must elicit *actual facts* from an accused and not merely legal conclusions,"[57] in light of the "substantial leeway in conducting providence inquiries,"[58] the military judge did not abuse his discretion in initially accepting Appellant's plea to assault consummated by a battery.

But that wasn't the end of the matter. The parties agree, as they must, that "conflict between presentencing evidence and a providence inquiry requires the military judge reopen the providence inquiry[.]"[59] But the Government wrongly asserts that such a conflict didn't occur here.

Once the Government introduced prosecution exhibits indicating Appellant spent Halloween night of 2020 rubbing CPT Mike's back, touching her arms and legs, kissing her, and having oral and vaginal sex with her, all before being invited into her hotel room after Appellant expressed his desire to have sex again, the military judge abused his discretion when he failed to reopen the *Care* inquiry to explain why—after all that—it was a "leap of faith" for Appellant to believe he could also touch CPT Mike's bicep before they had sex again.

---

[53] Manual for Courts-Martial, United States (2019 ed.), Part IV, ¶ 77c(2)(a) at IV-118.

[54] *United States v. Johnson*, 54 M.J. 67, 69 (C.A.A.F. 2000) (citing *United States v. Greaves*, 40 M.J. 432, 433 (C.M.A. 1994)).

[55] R. at 26.

[56] R. at 28.

[57] *United States v. Moratalla*, 82 M.J. 1, 4 (C.A.A.F. 2021) (citing *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017)) (emphasis in original).

[58] *Id*. at 3.

[59] Gov't Brief at 31.

Absent any explanation, this evidence squarely raises the defense of mistake of fact.[60] Accordingly, Appellant's plea to assaulting CPT Mike's bicep is improvident.

**B. The appropriate remedy for the improvident plea in this case is to set aside the findings and sentence and afford Appellant the opportunity to plead anew or proceed to trial.**

"[T]he normal remedy for finding a plea improvident is to set aside the finding based upon the improvident plea of guilty and to authorize a rehearing at which the accused is permitted to plead anew."[61] More often than not, we will affirm the remaining unaffected findings and authorize a rehearing as to the improvident plea or the sentence.[62]

But in cases involving a plea agreement, and depending on the terms of the plea agreement, successfully challenging a plea as improvident on appeal can have the same effect as if the military judge had not accepted the plea in the first place, which is often an express basis for cancellation of the agreement.[63] The plea agreement in this case contains a similar provision in the event Appellant failed to plead guilty.[64] But it also contains an express provision allowing the Government to withdraw from the plea agreement "if [the] findings are set aside because a plea of guilty is held improvident on appellate review."[65]

Setting aside the findings and sentence places the parties in exactly the position contemplated by Rule for Courts-Martial 705(e)(4), where both parties may now withdraw from the plea agreement or elect to proceed under the previous agreement.

For now, Appellant has evinced his intent to withdraw from the plea agreement by challenging the providence of his pleas to all the charges and specifi-

---

[60] *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997) ("The military judge must establish on the record a factual basis for the plea and must remain satisfied of that basis all the way through sentencing."). This Court has a similar responsibility. *Id.*

[61] *United States v. Negron*, 60 M.J. 136, 143-44 (C.A.A.F. 2004) (citations omitted).

[62] *See, e.g., United States v. Moon*, 73 M.J. 382, 388 (C.A.A.F. 2014).

[63] *See United States v. Von Bergen*, 67 M.J. 290, 294 (C.A.A.F. 2009); *United States v. Kibler*, 2023 CCA LEXIS 468 at *16-17 (Army Ct. Crim. App. Oct. 31, 2023) (unpublished).

[64] App. Ex. I at 5.

[65] App. Ex. I at 1.

cations and by alleging that his trial defense counsel were ineffective in negotiating the plea agreement in this case,[66] which he alleges no reasonable attorney would have done.[67]

We hold that the conditions allowing the parties to withdraw from the plea agreement have been met. And under the facts of this case, we set aside the findings and sentence so the Government and Appellant may fully avail themselves of the remedies available to them below, which may include, but are not limited to, permitting Appellant to plead anew or proceed to trial.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, the finding of guilty as to Charge I and Charge II are **SET ASIDE**. The sentence is **SET ASIDE**. A rehearing is **AUTHORIZED**.[68]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[66] Our decision in this case does not require the Court to address Appellant's other assignments of error, and we express no opinion as to their merit.

[67] Def. Brief at 34.

[68] Articles 59 & 66, UCMJ.