Amos *v.* Carson *et ux.*

(*Nashville*, December Term, 1947.)

Opinion filed May 3, 1948.

Williams, Cummings & West and James Clarence Evans, all of Nashville, for Amos, appellant.

Hume, Howard & Davis and Reber Boult, all of Nashville, for Carsons, appellees.

Mr. Justice Burnett delivered the opinion of the Court.

In this suit the appellant, Amos, has sued the appellees, Carsons, for an alleged breach of warranty against encumbrances. It is alleged that a deed was made war-

ranting the property unencumbered when ''the property was in fact at the time of the conveyance subject to certain encumbrances and restrictions imposed thereon by the Federal Housing Administration by a specific priority, issued pursuant to Priorities Regulation 33 issued by the Civilian Production Administration''.

The appellees demurred to the bill setting forth nine separate grounds of demurrer. The Chancellor sustained the demurrer. An appeal was seasonably perfected and the cause has been ably briefed and argued here.

According to the allegations of the bill, which must be taken as true, a priority to construct a one family dwelling was issued to one Max Clopton on March 11, 1946. Under this priority the maximum sales price of the house was fixed at $9,500.00.

On August 24, 1946, Clopton conveyed the property to one Maddux for an undisclosed price but without notice of the above mentioned priority price.

On September 4, 1946, Maddux conveyed the property to the appellees at an undisclosed sales price and without notice of the priority price.

On October 5, 1946, the appellees conveyed the property to the appellant at a sales price of $11,500.00. Neither party had notice of the priority price. Under the priority other restrictions, such as a maximum rental priority to veterans, was also in force. None of these restrictions were carried in the respective deeds and no notice is alleged in the parties subsequent to Clopton.

Priorities Regulation 33 as amended was issued on June 14, 1946, (it is conceded a similar regulation was in force at and on the day the priority herein was issued on March 11, 1946). Apparently these regulations, in connection with veteran's housing, were issued by the

Civilian Production Administration by authorization of the President of the United States under the authority of the First War Powers Act, 1941, 55 Stat. 838, 50 U. S. C. A. Appendix, sec. 601 *et seq.*, and Second War Powers Act, 1942, as amended, 50 U. S. C. A. Appendix, sec. 631 *et seq.* Basically any breach of the warranty against encumbrances herein must be based on some breach of the conditions found in this regulation. This must of necessity be true because the only breach of covenants alleged is the failure to comply with these Priority Regulations. No ceiling price limitation is known to the common law. Such are either creatures of statute or some duly constituted board.

Among the pertinent provisions of this regulation, promulgated to carry out the Veterans Emergency Housing Program, is a proviso giving "Preference for Veterans of World War II and members of the Armed Forces" to purchase or rent houses built under these priorities; a proviso fixing "Maximum sales prices and rents" and providing in part as follows:

"(i) General. The restrictions on sales prices and rents contained in this paragraph (g) must be observed so long as this regulation remains in effect. . . ."

The subsequent paragraph (g) (ii) provides that a builder must not sell for more than the maximum sales-price. The Section (g) (iii) provides:

"No other person shall sell a one-family dwelling built or converted under this regulation, including the land and all improvements for more than the maximum sales price specified in the application as approved, plus the amount of any normal and customary brokerage fees or commissions, etc. . . ."

A proviso for the form of notification to be placed in deeds and advertisements of sale is as follows: "The building on the premises hereby conveyed was built (converted) under Priorities Regulation 33 (builder's a serial No.————). Under that regulation, a limit is placed on either the sales price or the rent for the premises or both, and preferences are given to veterans of World War II or members of the Armed Forces in selling or renting. As long as that regulation remains in effect, any violation of these restrictions by the grantee or by a subsequent purchaser will subject him to the penalties provided by law. The above is inserted only to give notice of the provisions of Priorities Regulation 33, *and neither the insertion of the above nor the regulation, is intended to affect the validity of the interest hereby conveyed.*" (Emphasis that of this Court).

The regulation prescribes no violation of the civil rights between the parties and does not define any civil remedies therefor. The regulation does prescribe a criminal penalty for a wilful violation in words as follows: "Violations. Any person who wilfully violates any provision of this regulation or who in connection with this regulation, wilfully conceals a material fact or furnishes false information to any department or agency of the United States, is guilty of a crime, and upon conviction may be punished by fine or imprisonment. In addition, any such person may be prohibited from making or obtaining any further deliveries of, or from processing or using material under priority control, and may be deprived of priorities assistance."

On May 22, 1946, 60 Stat. 207, the Congress enacted statutory legislation affecting "Veterans Emergency Housing" which was carried in 50 U. S. C. A. Ap-

pendix, under sections 1821-1833 inclusive. This statute in effect puts many of the provisions of the above regulation into statute form, defines terms, provides penalities for violations, designates courts having jurisdiction, and provides that: "If any person selling housing accommodations, violates a regulation or order prescribing a maximum selling price, the person who buys such housing accommodations may, within one year from the date of the occurrence of the violation, bring an action for the amount by which the consideration exceeded the maximum selling price, plus reasonable attorney's fees and costs as determined by the court." 50 U. S. C. A. Appendix sec. 1827(d).

Many of the provisions of the statute above referred to were repealed by Congress on June 30, 1947, 61 Stat. 193, including section 1827(d) of 50 U. S. C. A. Appendix last above quoted, but in the repealing act it was provided that any priorities granted during the pendency of the act "shall remain in full force and effect".

The defendants below, appellees here, expressly plead and relied on the above quoted 1827(d) of 50 U. S. C. A. Appendix as a twelve months statute of limitations barring any right the complainant might have. The suit herein was not brought within twelve months of the accrual of any right of action the complainant might have had.

Is the statute, above quoted, a limitation statute and is it applicable herein?

■ The statute was in force when the appellant purchased this property on October 5, 1946. The right of action thereunder dated from this date. Suit was filed herein on October 16, 1947, or more than one year after the cause of action accrued. This statute authorized a

civil suit by buyers against sellers who violate maximum sales prices. It is the only statute or regulation we know of wherein such a suit is authorized. This statute which prescribes a right of action also prescribes the time within which this right may be exercised. That is, the buyer "may, within one year from the date of the occurrence of the violation, bring an action . . ." To say that the right "may" be exercised within the prescribed time is to preclude the idea that it may be exercised at some later time.

It is said the action herein is one based upon a breach of covenant against encumbrances. Such a covenant "is one which has for its object security against those rights to, or interests in, the land granted which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee." 21 C. J. S., Covenants, sec. 42, page 914. Such a covenant is in effect one of indemnity whereby the covenantor or grantor agrees to indemnify against an outstanding adverse title, charge, burden, or interest constituting an encumbrance. It is a covenant *"in praesenti"*, which if not true is broken as soon as made. *Robinson* v. *Bierce,* 102 Tenn., 428, 52 S. W. 992, 47 L. R. A. 275.

There is no allegation herein that the appellees, (grantors or covenantors) knew anything about the alleged restrictions or encumbrances claimed. The notice of such, as prescribed in the regulations, was not affixed to the preceding deeds. Apparently the promulgators of the regulation did not intend this alleged restriction or encumbrance to affect the interest conveyed by any subsequent deed when they provided in the proposed notice that "neither the insertion of the above, *nor the regulation is intended to affect the validity of the interest hereby conveyed.*"

It seems rather clear to us that the agreement or covenant of Clopton, the builder, was purely a personal covenant or agreement. He unquestionably breached this agreement and violated the Regulation when he executed a deed without reference to the limitation or restrictions of the Administrative Regulation. The covenant he made though was not a real covenant, *i. e.*, one so closely connected with the realty that its benefits or burdens passed with the sale of the realty. It is apparent to us from a study of this Regulation that there was no intent to fix any lien or obligation on the land that would pass by the respective transfers thereof, without notice, and obligate a subsequent grantor to remove what Clopton agreed to, because it was a burden or charge upon the title.

It necessarily follows that if this agreement of Clopton's was not a burden or charge against the realty that then the appellant (grantee in the deed) cannot recover on a personal action of covenant against the appellees (grantor's in the deed).

The conclusion we have reached herein seems to us inescapable. It would be an intolerable burden to place on the purchaser of real property or on the practical abstracter to require him to pry into and examine all conveyances outside the record chain of title. Of course there are ordinances of cities and statutes of the State or Federal Government that might constitute liens on realty. The abstracter for the purchaser has ways and means of finding out what these are and is bound by them. A mere regulation of a board or commission, which does not attempt in plain language to fix a lien on the property, should not burden the property to the extent of constituting an encumbrance thereon.

For the reasons assigned, the decree below is affirmed.