RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0291p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

RICHARD FABER and JENNIFER MONROE, Individually
and also on behalf of all similarly situated persons,

> *Plaintiffs-Appellants*,

    *v.*

CIOX HEALTH, LLC, d/b/a HealthPort Technologies,
LLC,

> *Defendant-Appellee*.

No. 18-5896

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:16-cv-02337—S. Thomas Anderson, District Judge.

Argued: May 2, 2019

Decided and Filed: December 5, 2019

Before: MERRITT, KETHLEDGE, and NALBANDIAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Kevin McCormack, BALLIN, BALLIN & FISHMAN, P.C., Memphis, Tennessee,
for Appellants. Jay P. Lefkowitz, P.C., KIRKLAND & ELLIS, LLP, New York, New York, for
Appellee. **ON BRIEF:** Kevin McCormack, BALLIN, BALLIN & FISHMAN, P.C., Memphis,
Tennessee, for Appellants. Jay P. Lefkowitz, P.C., KIRKLAND & ELLIS, LLP, New York,
New York, Garry K. Grooms, BURR & FORMAN LLP, Nashville, Tennessee, for Appellee.

     NALBANDIAN, J., delivered the opinion of the court in which KETHLEDGE, J.,
joined., and MERRITT, J., joined in part. MERRITT, J. (pp. 16–18), delivered a separate
opinion concurring in part and dissenting in part.

—————————

**OPINION**

—————————

NALBANDIAN, Circuit Judge.   Courts play a limited role in effecting public policy in this country.   In short:  legislatures make the policy; we interpret it.   So when Congress chose not to create a private right of action in HIPAA, it wasn't our job to graft one onto Tennessee common law.   And when the Tennessee legislature failed to make Ciox liable under the TMRA, it wasn't up to us to make it liable anyway.   The district court understood this, so we AFFIRM its judgment.   But because the district court granted summary judgment to Ciox after certifying a class action without sending notice to the absentee class members, we hold that its decision binds only the named Plaintiffs.

I.

Ciox[1] is one of the largest medical-records providers in the country.   It doesn't provide any healthcare services of its own, but it contracts with those who do.   In fact, three out of every five hospitals use Ciox to help patients access their medical records.   Unsurprisingly, Ciox processes many records—about 4.3 million pages per day in 2018.   It's also unsurprising, then, that Ciox is subject to many laws and regulations.

One of those laws is the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, § 264, 110 Stat. 1936 (1996).   HIPAA subjects Ciox to Department of Health and Human Service regulations.   Those regulations include fee-limit provisions under 45 C.F.R. § 164.524(c)(4), which, in turn, prohibit Ciox from charging patients more than "reasonable, cost-based fee[s]" for their records.   *Id.*

HIPAA hasn't stopped the states from regulating this activity.   Tennessee, for one, has layered on additional rules that govern patients' access to medical records.   *See* Tennessee Medical Records Act of 1974 ("TMRA"), Tenn. Code. Ann. §§ 68-11-301 to -314.   And those

---

[1]"Ciox" refers to the Defendant: Ciox Health, LLC, d/b/a HealthPort Technologies, LLC.

rules prevent hospitals from charging patients more than the "reasonable costs for copying and the actual costs of mailing [their] records." Tenn. Code Ann. § 68-11-304(a)(2)(A)(ii).

That's the regulatory backdrop of this appeal. Here are the specifics: Both named Plaintiffs worked with law firms to request their medical records from two Tennessee hospitals. And both hospitals contracted with Ciox to provide patients their medical records. It was Ciox who serviced Plaintiffs' requests, and it was Ciox who charged them for their records.

Plaintiffs would eventually file this class action. Among other things, they accused Ciox of charging them more than what HIPAA's implementing regulations and the TMRA allow. But, evidently, they realized they faced a serious hurdle: HIPAA doesn't authorize a private cause of action. *See, e.g.*, *Thomas v. Univ. of Tenn. Health Sci. Ctr. at Memphis*, No. 17-5708, 2017 WL 9672523, at *2 (6th Cir. Dec. 6, 2017) (recognizing a consensus among our sister circuits "that there is no private right of action under HIPAA"). So Plaintiffs decided to style their HIPAA-based claims as common-law causes of action. These included causes of action based on negligence, negligence per se, unjust enrichment, and breach of implied-in-law contract.

The district court dismissed Plaintiffs' TMRA claim for failure to state a claim. Plaintiffs later moved to certify a class of "persons who requested their medical records from medical providers and were subsequently overcharged for their medical records by Defendant Ciox." Plaintiffs and Ciox filed cross motions for summary judgment about three months later. And the district court eventually granted Plaintiffs' motion for class certification under Rule 23(b)(3).[2] Just two weeks later, the district court granted Ciox's summary judgment motion.

---

[2]The court agreed to define the class as:

> From May 13, 2010 to the present, Plaintiffs and all similarly situated patients who, personally or through a personal representative such as an attorney, requested their medical records from Ciox or one of Ciox's medical provider clients in Tennessee, and whom Ciox charged any of the following: (1) a "basic fee" and/or "electronic delivery fee" the combined value of which exceeds $6.50; (2) a "per page (paper)" fee when records were delivered electronically; or, (3) a "per page (paper)" fee that exceeds the actual labor and supply costs incurred by Ciox in fulfilling that request.

(R. 123, Class Certification Order at PageID #1730.)

Plaintiffs now appeal the district court's grant of summary judgment to Ciox, which we review de novo. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). They also appeal the district court's dismissal of their TMRA claim, which we also review de novo. *Beydoun v. Sessions*, 871 F.3d 459, 464 (6th Cir. 2017).

## II.

All of Plaintiffs' common-law claims suffer from the same fundamental defect: Tennessee common law is no substitute for the private right of action that Congress refused to create in HIPAA. That unavoidable conclusion has consequences. Here, it means that Plaintiffs cannot prove every element of their claims.

## A.

*Negligence and Negligence Per Se.* Plaintiffs' negligence and negligence per se claims fail right out of the gate for the same reason: Plaintiffs cannot establish that Ciox owed Plaintiffs a duty to not overcharge for medical records.[3] That is because no such duty exists under Tennessee's common law. *See Amos v. Carson*, 210 S.W.2d 677, 678 (Tenn. 1948) ("No ceiling price limitation is known to the common law. Such are either creatures of statute or some duly constituted board."). As a result, each of Plaintiffs' attempts to locate that duty leads to a predictable dead end.

Plaintiffs first point us to *Bradshaw v. Daniel*, where the Tennessee Supreme Court declared, "all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." 854 S.W.2d 865, 870 (Tenn. 1993). It isn't hard to see why Plaintiffs like this language. On its own, it's sweeping enough to turn every offense under the sun into a common-law tort. But we don't read judicial opinions in a vacuum. The *Bradshaw* rule is one that would be familiar to most first-year law students: All persons must exercise reasonable care to avoid causing *physical* harm to another's person or property. *See Satterfield*

---

[3]To establish a negligence or negligence per se claim in Tennessee, a plaintiff must show: "a duty of care owed by the defendant to the plaintiff." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Myers v. United States*, 17 F.3d 890, 892 (6th Cir. 1994). And the "existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Carson v. Headrick*, 900 S.W.2d 685, 690 (Tenn. 1995) (citing W. Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 37 at 236 (5th ed. 1984)).

*v. Breeding Insulation Co.*, 266 S.W.3d 347, 362 (Tenn. 2008); *see also* Dan B. Dobbs et al., THE LAW OF TORTS § 127 (2d ed. 2019) (describing the reasonable care standard as the "default rule" for "negligent *physical* interferences with person or property") (emphasis added and alterations omitted); RESTATEMENT (THIRD) OF TORTS § 6 (2010) ("Ordinarily, an actor whose conduct creates risks of *physical* harm to others has a duty to exercise reasonable care.") (emphasis added).

*Bradshaw* itself reflects that general rule because the injury there was physical. So was the injury in the case it relied on for the rule. *See Doe v. Linder Const. Co.*, 845 S.W.2d 173, 175 (Tenn. 1992). This is not to say that "physical harm" is the only type of cognizable injury under Tennessee negligence law. Tennessee, like other states, has long recognized negligence claims protecting other interests. These include claims based on negligent infliction of emotional distress and negligent misrepresentation causing economic injury. *See, e.g.*, *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 429 (Tenn. 1991). But we are unaware of any negligence claim that could hold Ciox liable for "overcharging" Plaintiffs. *Bradshaw* certainly gives us no license to invent such a claim. So we do not. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) ("When given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.") (internal quotation marks omitted).

Plaintiffs next point us to Ciox's answer to their complaint. There, Ciox allegedly admitted that it "owe[d] a duty to patients, including Plaintiffs and Class members, to comply with federal law and regulations including HIPAA and the HITECH Act." (Pls.' Reply Br. at 3–4.) But surely Ciox's pleadings are not authoritative pronouncements of Tennessee law. And besides, a quick look at the record confirms that Plaintiffs' claim is misleading. Ciox only admitted that it "ha[d] a duty to comply with the law." (R. 44, Ciox's Answer at PageID #388 ¶ 118.) That, of course, tells us nothing about whether Ciox owed Plaintiffs the type of common-law duty at issue here.

Plaintiffs also misplace their reliance on cases suggesting that statutes may inform the standard of care of an ordinary negligence claim. *See, e.g.*, *Shanklin v. Norfolk S. Ry. Co.*,

369 F.3d 978, 996 (6th Cir. 2004) (Rogers, J., concurring) (discussing *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799 (6th Cir.1984)).  This, of course, is one possible use for statutory standards short of deeming such violations negligence per se.  *See, e.g.*, Barbara Kritchevsky, *What Does Law Have to Do with it: The Jury's Role in Cases Alleging Violations of Law, Custom, and Standards*, 71 ARK. L. REV. 45, 122 (2018) (arguing that a statutory violation is "relevant to the question of negligence and is certainly something the jury should be able to consider"); Barry L. Johnson, *Why Negligence Per Se Should Be Abandoned,* 20 N.Y.U. J. LEGIS. & PUB. POL'Y 247, 250 (2017) (arguing that "treating statutory violation[s] as some evidence of negligence would be the better approach").  But the problem for Plaintiffs is that the issue is not whether statutes can inform what it means to breach a hypothetical duty.  The issue is whether such a duty exists under Tennessee common law in the first place.  And here it does not.

The same goes for Plaintiffs' negligence per se claim.  That aptly named doctrine permits a court to treat a statutory violation as a per se breach of the standard of care.  *See Estate of French v. Stratford House*, 333 S.W.3d 546, 560–61 (Tenn. 2011); *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003).  But it does *not* permit a court to recognize new common-law duties that could not support an ordinary negligence claim.  *See Rains*, 124 S.W.3d at 589; Dan B. Dobbs et al., THE LAW OF TORTS § 148 (2d ed. 2019) ("Likewise, the defendant must be under a duty to use reasonable care; if he is not, violation of the statute cannot prove breach of duty.").  In other words: "The negligence per se doctrine does not create a new cause of action.  Rather, it is a form of ordinary negligence that enables the courts to use a penal statute to define a reasonably prudent person's standard of care." *Rains*, 124 S.W.3d at 589 (citations omitted).[4]

---

[4]We recognize the tension between this excerpt from *Rains* and its earlier statement that "the common law is not the only source of legal duties or standards of conduct in negligence cases."  124 S.W.3d at 588.  But the tension disappears when one recognizes that the court was using the terms "duties" and "standards of conduct" interchangeably, as often happens.  *See* Peter F. Lake, *Common Law "Duty" Analysis: The Conceptual Expansion of "Duty" in a Period of Doctrinal Consolidation/Retrenchment*, 10 KAN. J. L. & PUB. POL'Y 153, 155 (2000) ("[T]he concept of standard of care becomes so connected with duty that sometimes the words are used interchangeably.").  Language elsewhere in the opinion supports this reading.  For example, the court spoke of the reasonable-person standard as "requir[ing] a person to exercise reasonable care." *Rains*, 124 S.W.3d at 588.  But it is really *duty* that speaks to the "require[ment]" and *standard of care* that speaks to "reasonable[ness]." *Id.*  In any event, the rest of the court's opinion makes clear what it was saying.  And we know it wasn't saying that negligence per se could recognize new causes of action unknown to ordinary, common-law negligence.  After all, it disclaimed

Our decision in *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994), illustrates the point. In *Myers*, the survivors of six miners killed in a Tennessee coal mine sued the United States. *Id.* at 892. The survivors alleged that federal inspectors had caused the explosion by breaching certain regulations, making the Government liable under negligence per se. *Id.* On appeal, we characterized the survivors' arguments as "fundamentally flawed." *Id.* We explained that "the doctrine of negligence per se is never, by itself, a basis for liability." *Id.* Because the survivors hadn't shown that the inspectors owed the miners a common-law duty of care, their negligence per se claim failed. *Id.*; *see also Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 476 (6th Cir. 1995) (applying Tennessee law and holding that the plaintiff's negligence per se claim failed because the plaintiff failed to prove the existence of a duty "independent" of a federal statute).[5]

So too here. Plaintiffs can't prove the existence of any common-law duty that could support their negligence claims. So their negligence claims fail.

## B.

*Quasi-contract claims.* Plaintiffs' claims based on implied-in-law contract and unjust enrichment fail for largely the same reasons. In Tennessee, these claims "are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). They refer to those situations when, based on "justice and equity," the law will imply a contractual relationship without a legal contract. *Id.* Essentially, Plaintiffs ask us to hold that Ciox owes Plaintiffs a quasi-contractual duty to not charge them more for their medical records than HIPAA permits.

---

as much. *Id.* at 589 ("The negligence per se doctrine does not create a new cause of action."); *see also id.* at 590 ("The common law tort of negligence is not changed, but the expression of the standard of care in certain fact situations is modified; it is changed from a general standard to a specific rule of conduct.") (quoting RESTATEMENT (SECOND) OF TORTS § 874A cmt. e). That there is at least some confusion over the word "duty" is not new. *See, e.g.*, Esra Ripley Thayer, *Public Wrong and Private Action*, 27 HARV. L. REV. 317, 318 (1914) ("Too often the mere statement of a conclusion that 'the statute creates a duty to the plaintiff' is used as if it furnished some reasons in its own support.").

[5]Permitting any statute to establish both an actionable duty on the part of any violator of that statute in favor of any party claiming damage from the violation—as well as the standard of care for breach of that duty—would be akin to implying a private right of action for any statutory violation. *See* Dobbs et al., THE LAW OF TORTS § 146 (discussing private rights of action versus negligence per se). Again, that is something that we will not do. *See Marquay v. Eno*, 662 A.2d 272, 277 (N.H. 2015) (comparing expressed or implied causes of action with negligence per se and noting that "[t]he doctrine of negligence per se . . . plays no role in the creation of common law causes of action"); *Draper v. Westerfield*, 181 S.W.3d 283, 292 (Tenn. 2005) (citing *Marquay*) (distinguishing between statutory rights of action and negligence).

They ask us for this because, of course, the parties never entered into a legal contract to that effect. But Plaintiffs cite no authority remotely suggesting that "justice and equity" under Tennessee common law so requires. Nor have we found any. And the one case on which they substantially rely is inapposite. *See Laborers Pension Tr. Fund v. Interior Exterior Specialists*, 394 F. App'x 285, 294 (6th Cir. 2010) (recognizing an unjust enrichment claim under "federal common law for equitable restitution of *mistaken* payments") (emphasis added). So Plaintiffs' quasi-contract claims also fail.

C.

*Tennessee Medical Records Act.* Plaintiffs' TMRA claim flounders for a different reason. As relevant here, the TMRA is unlike HIPAA in two ways—one good for Plaintiffs, one bad (indeed, fatal) for them. The good: The TMRA appears to authorize a private cause of action. *See* Tenn. Code Ann. § 68-11-311. At least the parties don't dispute that it does. The bad: The TMRA's fee limits unambiguously do *not* apply to medical-records providers like Ciox. *See infra*.

The TMRA's fee limits are clear: They apply exclusively to hospitals. *See* Tenn. Code Ann. § 68-11-304(a)(1)–(2). The Act mandates that a "*hospital* shall furnish to a patient or a patient's authorized representative . . . the patient's hospital records." *Id.* § 68-11-304(a)(1) (emphasis added). The same subdivision that imposes this duty also includes the TMRA's fee limits. *See id.* § 68-11-304(a)(1)–(2). Those provisions prohibit the hospital from charging more than the "reasonable costs of copying and mailing the patient's records." *Id.* § 68-11-304(2)(A)(i). They also describe what "reasonable costs" include and don't include. *Id.* § 68-11-304(2)(A)(i)–(iii). And they list what charges "shall be presumed to be reasonable." *Id.* § 68-11-304(2)(A)(iii).

All of this leads to one inescapable conclusion: Plaintiffs' entire TMRA claim rests on a part of the statute that applies exclusively to hospitals. And just what is a hospital under the TMRA? Common sense tells us it isn't a medical-records provider like Ciox. But we need not rely on common sense because the TMRA spells it out for us. Under the TMRA, "'Hospital' means any institution, place, building or agency that has been licensed by the board, as defined

in § 68-11-201, or any clinic operated under the authority of a local or regional health department established under chapter 2, parts 6 and 7, of this title." Tenn. Code Ann. § 68-11-302(4). No one disputes that Ciox is not a hospital under this definition.[6]

Ordinarily, this would settle the matter. The statutory text is unambiguously clear: The TMRA's fee limits apply only to hospitals, and Ciox is not a hospital. But there's one wrinkle. The Tennessee Court of Appeals has held that the statute applies not just to hospitals but also to "independent copying services" like Ciox. *See Pratt v. Smart Corp.*, 968 S.W.2d 868, 873 (Tenn. Ct. App. 1997).

In *Pratt*, a patient sued one such company under the TMRA, alleging that the company had "grossly" overcharged her for her medical records. *Id.* at 870. The company argued that, as an independent-copy service, the TMRA did not apply to it. *Id.* at 873. The court acknowledged that the TMRA "does not specifically mention such entities." *Id.* But the company had "acted as the hospital's authorized agent." *Id.* Thus, said the court, the company "could not perform acts which the hospital was forbidden by law to perform itself." *Id.* In the court's view, the legislature's objective "would be completely defeated" if hospitals could hire such companies that then "charged more than the reasonable copying and mailing costs." *Id.*

*Pratt* presents us with two mutually exclusive options: We can follow the court's holding despite the plain meaning of the statute. Or we can follow the plain meaning of the statute despite the court's holding. We follow the statute.

In diversity cases, we are only bound by the forum state's highest state court. *United States v. Anderson County*, 761 F.2d 1169, 1173 (6th Cir. 1985). But we don't part company with *Pratt* lightly. When the state's highest court hasn't addressed the issue, "we must predict

---

[6]Well, almost no one. The dissent cites a nationwide "patchwork of results" for recognizing private rights of action for excessive fees charged by medical providers. But inconsistent results on this issue stem not from inconsistent federal jurisprudence but from varied state medical records statutes. Federalism almost demands it to be so. Here, the Tennessee legislature enacted language making its medical records act applicable only to hospitals. Compare that with Georgia's Health Records Act, which includes "health maintenance organizations" in its definition of a provider. Ga. Code Ann. § 31-33-1(2). Or with the Iowa statute that states any "organization that furnishes, bills, or is paid for health care in the normal course of business" is a provider. Iowa Code § 622.10(6)(e)(2). The Tennessee legislature restricted TMRA's fee limits to hospitals only. It is of little consequence that other state legislatures drafted medical records bills with differing text, or that the courts of those states reached different conclusions from this opinion by following differently worded laws.

how [it] . . . would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). This "include[s] the decisional law of the state's lower courts." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001). And we may only disregard an on-point decision of the state appellate court if "other persuasive data" convinces us that the highest state court "would decide otherwise." *Id.* (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989)).

We have little doubt that the Tennessee Supreme Court would disagree with *Pratt*. The Tennessee Supreme Court has reiterated time and again that the plain meaning of the written text controls when the statute is unambiguous:

> When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998).

*In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010). *See also Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997) ("[T]o ascertain and give effect to legislative intent . . . means examining the language of a statute and applying its ordinary and plain meaning.") (citations omitted).**7** Here, the statutory text is unambiguous. We therefore apply its plain meaning and hold that the TMRA's fee limits do not apply to Ciox.

*Pratt* is also unconvincing on its own terms. Assume, as it said, that an agent may not perform acts that the law prohibits the principal from performing. *Pratt* never explained why an agent would necessarily be liable for such acts. When an agent violates a statute, the agent's liability ultimately depends on the terms of the statute. *See* RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. c (2006). And here, the statute makes the principal liable.

---

**7**When we construe a state statute, we apply the rules of construction that the state supreme court applies when construing its own statutes. *Jones v. City of Franklin*, 677 F. App'x. 279, 286 (6th Cir. 2017) ("The Tennessee Supreme Court has established clear and plain methods for interpreting Tennessee statutes[.]"); *accord, e.g.*, *Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir. 2007) ("When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply . . . ."); *see generally* Abbe R. Gluck, *Intersystemic Statutory Interpretation: Methodology as "Law" and the* Erie *Doctrine*, 120 YALE L.J. 1898 (2011).

Moreover, *Pratt* is wrong to predict that the result that we reach will frustrate the purpose of the TMRA. We see no reason why Plaintiffs couldn't have sued the hospitals to begin with, nor could Plaintiffs give us one at oral argument. If the TMRA makes one thing clear, it is that hospitals are ultimately responsible for patient medical records. We seriously doubt they can evade this statutory duty by outsourcing it to a third-party agent. So we need not entertain *Pratt*'s dubious prediction.

D.

*Class Notice.* Finally, both parties agree that the district court's grant of summary judgment without class notification warrants further action by our court. After all, Rule 23(c)(2) requires the district court to give notice to the class, and so does the Constitution. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case.").

But the parties disagree on the appropriate remedy. Ciox argues that this court should remand to the district court for the sole purpose of issuing opt-out notices at Plaintiffs' expense. Plaintiffs argue that the district court's order must be limited to the named Plaintiffs only. Although this is an issue of first impression in our circuit, we are not without guidance.

Here's the general rule: When the defendant moves for and obtains summary judgment before the class has been properly notified, the defendant waives the right to have notice sent to the class, and the district court's decision binds only the named plaintiffs. *See, e.g.*, *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir. 1980); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759 (3d Cir. 1974) (en banc); *accord* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1788 n.2 (3d ed. 2005); 5 MOORE'S FEDERAL PRACTICE § 23.101 (2019). "In such a situation, 'the defendants . . . assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members, for only the slender reed of stare decisis stands between them and the prospective onrush of litigants.'" *Schwarzschild*, 69 F.3d at 297 (emphasis omitted and alteration in original) (quoting *Postow*, 627 F.2d at 1382); *accord Katz*, 496 F.2d at 759. Ciox's argument that applying the general rule

would be inequitable ignores the fundamental requirement that class members receive notice in Rule 23(b)(3) class action suits.

Certification notice for class actions under Fed. R. Civ. P. Rule 23(c)(2) must be given before class members can be legally bound. And Rule 23(b)(3) class certification cannot bind a class without providing adequate notice as required by the Due Process Clause. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel."); *Eisen*, 417 U.S. at 177 (denying that providing "no notice at all" could satisfy Rule 23(c)(2) or the Due Process Clause). Moreover, notice that is "incomplete or erroneous or . . . fails to apprise the absent class members of their rights" does not satisfy due process. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 423 (6th Cir. 2012) (quoting 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1797.6 (2d ed. 1996)).

Until receiving adequate notice, class members merely constitute "passive beneficiaries with no notice to take note of the suit." *Bedel v. Thompson*, No. 91–3448, 1992 WL 44883, at *4 (6th Cir. 1992). This is true even after a court certifies the class. *Id.* Following this logic, class certification remains functionally incomplete until class members receive notice. If class members never get a chance to be heard, then notice does not satisfy the Due Process Clause. *Phillips Petroleum*, 472 U.S. at 811–12. And parties are not bound to class action judgments until given a full and fair opportunity to litigate. *Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 n.4 (1996).

Here, we consider the sufficiency of notice in an atypical sequence: The district court entered summary judgment for Ciox *after* certifying the class but *before* notice could be sent. In such a scenario, post-judgment notice would present no meaningful opportunity for class members to make their case. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). Still, Ciox wishes to bind members of a certified class to an adverse summary judgment decision, alleging that adequate post-judgment notice could be given on remand.

Considering the lack of notice, the class certification issued by the district court cannot bind absent class members. Post-judgment notice would only invite parties to enter a fight that they already lost. While courts have the prerogative to remand class action suits for post-judgment notice, it should only be done "in appropriate circumstances" where "equitable reasons" demand binding the class. *Postow*, 627 F.2d at 1382–83. Typically we disfavor "one way street" post-judgment certifications, where parties may enter a class action suit with full knowledge of the outcome. *Id.* at 1383; *see also Gooch*, 672 F.3d at 432 (explaining the importance of preventing "one-way intervention" in class action litigation). Here, class members would be prejudiced upon receiving notice of certification for a case they already lost on the merits, so the equities go against post-judgment notice.

Our disagreement with Ciox follows the general rule of movant beware: A defendant's motion for summary judgment made prior to class certification carries the risk of only binding the named plaintiffs, and not the entire class. William B. Rubenstein et al., 3 NEWBERG ON CLASS ACTIONS § 7:10 (5th ed. 2016) ("If it is the defendant moving for summary judgment prior to certification, courts view the defendant as deliberately waiving the possibility of a victory against the whole class."). And that principle applies here. Ciox submitted its motion for summary judgment three months before the district court certified the class. Despite waiving the potential to bind the class by making a pre-certification motion for summary judgment, Ciox now seeks to bind the class after winning on the merits. And it wants us to enforce this benefit even though it admits class members failed to receive proper notice. If defendants waive the ability to bind a class after moving for summary judgment in typical cases, then Ciox certainly waived it here. Even after applying the general rule, one knot remains left to untangle: What is the status of the class certification going forward?

Although the district court issued a valid class certification, the class members who could receive fair notice at this stage amount to an empty set. Neither party challenges the formal validity of the class certification or that the district court can grant motions on its preferred, though unusual, timeline. As for the class certification's functionality, the impossibility of giving adequate notice to class members now, or ever, renders the class certification inoperative.

*See Bedel*, 1992 WL 44883, at \*4. Unable to bind any class members, the class certification carries no effect and is therefore a nullity.

Additionally, Rule 23's text and structure further convince us that the general rule, i.e. that only named plaintiffs are bound when the defendant obtains summary judgment, is correct. Rule 23(c)(3) states that "the judgment in a class action must . . . for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3). It would make little sense for absentee class members to *not* request exclusion, as this rule contemplates, if the court gave them notice *after* granting summary judgment to the defendant. On top of that, Rule 23(C)(2)(B)(iv) requires that the notice inform class members that they "may enter an appearance through an attorney if [they] . . . so desire[]." But an attorney's appearance would seem to serve little purpose once the court has granted summary judgment. Lawyers usually appear in court to obtain favorable outcomes—not for its own sake. And Rule 23(d)(1)(B) provides that a court may inform class members of important steps in the litigation process. Again, that Rule is largely pointless if a district court grants summary judgment before notifying the class.

Rule 23 thus "clearly contemplates that the notice requirement will be met before the parties are aware of the district court's judgment on the merits." *Schwarzschild*, 69 F.3d at 296. We therefore adopt the general rule for our circuit and hold that the district court's decision binds only the named Plaintiffs.**[8]**

---

[8]The rule we adopt today is limited to the situation presented here: Where a defendant moves for and obtains summary judgment before the absentee class members have been notified. We do not intend to establish a rule governing all instances where the district court issues a judgment on the merits before the class has received notice. Other situations may call for a different rule or balance of considerations. For example, in *Postow*, the court allowed for post-judgment certification and notice where, based on "equitable reasons," the *plaintiffs* had succeeded on summary judgment. *Postow*, 627 F.2d at 1383. And in *Katz*, the court held that the defendant, "on the ground of fairness," could postpone class certification and notice until after plaintiffs had proved the violation. 496 F.2d at 758. But the certification and notice would only work to benefit the absentee class members:

> If [the named plaintiff] loses his case on violation they will not be bound. If [the named plaintiff] establishes the violation they can be afforded the same opting out option, but the notice will advise them that there is a judgment establishing violation, and their decision will be more informed than if the notice was sent early in the proceedings.

For these reasons, we AFFIRM the district court's decision in favor of the Defendant with respect to the named Plaintiffs. And because the merits of this lawsuit have been resolved, the trial court's certification of the class is a nullity and this case need not be remanded to issue post-judgment notice.[9]

---

*Id.* Thus, the defendant agreed to accept the risk that the class would be enlarged if the plaintiff established the violation. *Id.* at 762; *see also id.* at 760 n.7 (noting that a trial court could condition postponement of notice on a defendant's stipulation that it would "be bound in favor of potential class members by an adverse determination of liability").

[9]Ciox, of course, has still obtained something valuable here—a judgment in its favor on the merits that has been affirmed on appeal. Even though absent class members are not formally bound by the judgment, principles of stare decisis (and possibly preclusion) will prove to be valuable assets for Ciox should any absent class members choose to bring similar claims.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

MERRITT, Circuit Judge, concurring in part and dissenting in part. I agree with the majority's resolution of all claims except its affirmation of the dismissal of plaintiffs' claim under the Tennessee Medical Records Act, Tenn. Code Ann. §§ 68-11-301 *et seq.*

The Tennessee Court of Appeals has explicitly held that the statute in question, Tenn. Code Ann. § 68-11-302(4), applies to independent copying services like Ciox. *Pratt v. Smart Corp.*, 968 S.W.2d 868, 873 (Tenn. Ct. App. 1997). The majority states that in diversity cases we are bound only by the forum state's highest state court. Maj. Op. at 9. Regardless of whether this blanket statement is accurate, it does not mean that lower courts' opinions should not be given deference in the absence of explicit Supreme Court directive. Here, as conceded by the majority, the Tennessee Supreme Court has not ruled on the issue of whether the Tennessee Medical Records Act would allow plaintiffs to bring a claim against an independent copying service such as defendant Ciox, so we may look to the law of the state's lower courts.

In *Pratt*, the Tennessee Court of Appeals applied agency principles to hold that the Tennessee Medical Records Act of 1974 authorized a private cause of action by a patient against the independent copying service that processed the plaintiff's request for her hospital records and allegedly charged unreasonable fees. The majority boldly states that it has "little doubt" that the Tennessee Supreme Court would disagree with *Pratt* because it would look only to the plain language of the statute, which says that the fee limits apply only to hospitals. Maj. Op. at 10. Evidence to support this statement is lacking. The Tennessee Supreme Court denied permission to appeal *Pratt*, letting the Court of Appeals decision stand. In the only case where the Tennessee Supreme Court has cited *Pratt*, it did not criticize the holding. Instead, it simply found *Pratt* "unhelpful in resolving the question before us" because *Pratt* did not address the statute-of-limitations issue before the Court. *Brown v. Tenn. Title Loans, Inc.,* 328 S.W.3d 850, 861 (Tenn. 2010). The Tennessee Supreme Court's treatment of *Pratt* leads me to conclude that we should not so lightly reject the only decision from the Tennessee courts that has directly addressed the question before us based solely on a general rule of statutory construction that

courts should look to the plain language of the statute.  Maj. Op. at 10.  The only case to address the issue in Tennessee would allow the plaintiffs' claim under the Tennessee Medical Records Act to proceed, and I believe we should follow that sole decision unless it is clearly erroneous because it violates Tennessee law or policy.  The majority's argument does not clear that high hurdle.[1]

In addition, the policy question raised was thoroughly and reasonably handled by the Tennessee Court of Appeals in *Pratt*.  As *Pratt* noted, the state has an interest in transactions that violate "statutorily-defined public policy."  968 S.W.2d at 872.  Under the reasoning in *Pratt*, Ciox effectively stands in the shoes of Tennessee providers who have delegated to it the responsibility for responding to patient records requests.  *See id.* at 873.

Decisions by other courts, both state and federal, that have addressed the question of a private right of action for excessive fees charged by independent copying services for medical records have resulted in a patchwork of results with no clear consensus.  *See, e.g., Ruzhinskaya v. HealthPort Techs., LLC*, 942 F.3d 69 (2d Cir. 2019) (vacating the district court's opinion that held that copying companies could not be sued under the New York medical records law, and noting "continued uncertainty" as to the proper interpretation of the term "provider" under the copying provision of New York law); *Smith v. RecordQuest, LLC*, 380 F. Supp. 3d 838 (E.D. Wisc. 2019) (copy servicer was not liable to patient for charging excessive fees under Wisconsin statute governing access to patient health records), *appeal filed*, No. 19-2084 (7th Cir. June 7, 2019); *McCracken v. Verisma Sys., Inc.,* No. 6:14-cv-06248, 2017 WL 2080279, at \*6-7 (W.D.N.Y. May 15, 2017) (New York medical records act applies to entity that is not a "provider" of medical services); *Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 128-32 (Iowa 2016) (allegations that health care provider's records servicer charged fees in excess of

---

[1]Defendant asserts that plaintiffs' claim would fail in any event because the majority of its fees fall within the "safe harbor" statutory limits set by the Tennessee legislature after *Pratt* was decided.  Def. Br. at pp. 39-42. But that question is not before us, and the defendant's position is not as clear cut as it argues.  The statutory fee limits in the Tennessee Medical Record Act appear to cover primarily traditional "photocopying," not the digital or electronic "copying" performed routinely now.  Defendant concedes as much when it acknowledges that electronic delivery fees are not expressly included in the statute.  *Id*. at 41-42.  Plaintiffs could likely raise a debatable question of fact as to whether the fees charged by defendant for electronic or digital copying are "reasonable," regardless of whether they fall within the safe harbor limits, and, if proved, Ciox's allegedly excessive charges might well violate the Act.

those authorized under statute governing such record requests stated claim against servicer, as provider's agent); *Cotton v. Med-Cor Health Info. Sols., Inc*., 472 S.E.2d 92, 95 (Ga. Ct. App. 1996) (Georgia's Health Records Act, which governs the furnishing of the record of a patient by a "provider," applied "to entities such as defendants which supply photocopying services for such providers even though such entities may be acting as the providers' agents.").

The Tennessee Court of Appeals has provided a reasoned opinion holding that the Tennessee Medical Records Act applies to non-providers like Ciox. I would give deference to that opinion in the absence of any contrary authority by the Tennessee Supreme Court, or any other indication that the Court of Appeals opinion was clearly erroneous. I respectfully dissent from the majority's affirmance of the dismissal of plaintiffs' claim under the Tennessee Medical Records Act.